STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 170-12-14 Vtec |
| Atwood PUD - Jericho | DECISION ON THE MERITS |

Kevin Trout, Dorothy Wilson, Graham McAfee, Linda McAfee, Steven Wyatt, Donna Wyatt, Jeff Marshall, Jack Manning, Suba Luck, Brian Stevens, and Catherine Stevens (Appellants) appeal the Town of Jericho (Town) Development Review Board's (DRB) October 27, 2014 final plat subdivision approval authorizing Atwood Enterprises, Ltd. to develop a six-unit, three-duplex planned unit development (PUD) subdivision on a 28.5-acre portion of a 143-acre parcel of land located at 44 Raceway Road, Jericho, Vermont.[1]

At the beginning of this matter in January 2015, Appellants raised one question in their Statement of Questions: "Does the six-unit, three duplex PUD Subdivision on a 28.5 acre portion of an approximate 123 [sic] acre parcel of land owned by Atwood Enterprises, Inc. satisfy the requirements of the Jericho Land Use and Development Regulations?"

Because this single question was very broad, during the initial pre-trial status conference Appellants were ordered to file an Amended Statement of Questions setting forth specific issues to be addressed on appeal. See V.R.E.C.P 5(f). In March 2015, Appellants filed an Amended Statement of Questions raising the following questions:

1. Does the six-unit, three duplex PUD Subdivision on a 28.5 acre portion of an
   approximate 123 acre parcel of land owned by Atwood Enterprises, Inc. satisfy the

---

[1] Appellants filed their notice of appeal with the Environmental Division on December 3, 2014. Prior to our trial, Stephen Atwood and Atwood Enterprises, Ltd. (Applicants) filed a motion to dismiss this appeal on the grounds that the filing of the notice of appeal was more than 30 days beyond the date of the decision being appealed. Appellants opposed dismissal on the grounds that the Town's failure to timely serve them with a copy of the October 27 DRB decision justified the late filing of an appeal. We denied the motion in a February 18, 2015 entry order and concluded that Appellants did not delay in bringing their appeal but rather filed an appeal within a reasonable time after becoming aware of the possible need or opportunity for an appeal.

requirements of the Jericho Land Use and Development Regulations, including the following:

a. Whether the applicant has satisfied the procedural requirements to obtain approval, such as the compliance with the notice posting requirements of the Regulations and applicable law;
b. Whether the proposed subdivision meets the requirements of the Regulations applicable to planned unit developments;
c. Whether the proposed subdivision qualifies for and should be entitled to waivers from the strict application of the Regulations;
d. Whether the proposed subdivision complies with the Town of Jericho Comprehensive Plan?

The Statement of Questions serves to define the scope of our jurisdiction on appeal, and to provide notice to the other parties and this Court of the matters to be considered during the litigation. See V.R.E.C.P. 5(f); In re Musty Permit, No. 174-10-10 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. July 28, 2011). Therefore, matters not explicitly raised in the Statement of Questions, or intrinsic to the matters raised, are beyond our jurisdiction. See In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190. Some of Appellants' evidence offered at trial, and portions of Appellants' post-trial Proposed Findings of Fact and Conclusions of Law, are outside of the scope of the Amended Statement of Questions. As a result, we will not address all issues raised by the evidence, but only those identified by the Statement of Questions.

More specifically, a considerable amount of Appellants' evidence relates to conditional use review, site plan review, subdivision review, and general development standards. Yet none of Appellants' questions specifically raise these issues, and Appellants have made no offer of how this evidence relates to their Amended Statement of Questions.

We might speculate that Appellants believe these matters were raised through Question 1.b., which asks whether the proposed subdivision meets the requirements of the Jericho Land Use and Development Regulations (Regulations) "applicable to planned unit developments." First, we note that we do not literally interpret this question to implicate any and all provisions of the Regulations that are "applicable to planned unit developments." That interpretation would make Question 1.b. just as broad as Appellants' original question, which we ordered Appellants to refine. The original question asked whether the project "satisf[ies] the requirements of the Jericho Land Use and Development Regulations." Asking whether the

2

project "satisf[ies] the requirements of the Jericho Land Use and Development Regulations *applicable to that project*" is really no limitation at all, since no project need comply with regulations that do not apply to it. We therefore interpret Question 1.b. to ask whether the Project complies with the sections of the Regulations specific to PUD review, namely, Section 10.13 of the Regulations.

Section 10.13 does, however, make reference to provisions of the Regulations beyond PUD review.[2] Thus, interpreted broadly, Appellants' Question 1.b. could be read as an attempt to preserve any issue related to subdivision review, specific use standards, and Section 7 of the Regulations, in addition to PUD review.

Such a reading would be improper. Interpreting Question 1.b. to generally raise issues throughout the Regulations pertaining to PUDs, renders the question too "broad and ambiguous . . . to provide . . . notice to Applicant or the Court of the issue or issues [Appellants] wish to address," In re All Metals Recycling, No. 171-11-11 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. April 23, 2012) (Walsh, J.), and would ignore the Court's limited jurisdiction and earlier order in this matter to specify the issues to be reviewed on appeal. With the understanding that Environmental Division's jurisdiction in an appeal of a decision by a municipal panel is dictated and restricted by an appellant's statement of questions, and because the Court specifically directed Appellants to amend their Statement of Questions to specify the issues on appeal, we read Question 1.b. to only raise issues specific to Section 10.13 of the Regulations, and we will not consider conditional use review, site plan review, subdivision review, general development standards, or compliance with applicable wastewater and water supply rules and regulations.[3]

---

[2] For instance, Section 10.13.3 of the Regulations—Coordination of Review—provides that, "Applications for PUDs shall be reviewed pursuant to Section 10.12, Subdivision Review." Section 10.13.3 also directs that a PUD may include a conditional use, subject to conditional use review. Likewise, Section 10.13.9.1 of the Regulations states, "All PUDs shall comply with the subdivision review standard in Section 10.12, any and all applicable Specific Use Standards in Section 4.4 and the General Provisions in Section 7."

[3] Also beyond the issues raised within the Amended Statement of Questions are Appellants' concerns with the wetland setbacks, the Project's wastewater systems, and the Project's impact on the Foothills Development's water supply. Yet Appellants, through testimony and their post-trial briefing, offered evidence of non-compliance concerning these issues. Because these issues were not properly raised, we only provide a brief overview and analysis with the hope of addressing Appellants' concerns.

Appellants' Amended Question 1.c. asks whether the proposed subdivision qualifies for and should be entitled to waivers from the strict application of the Regulations. Based upon the evidence introduced during trial, the proposed subdivision does not request any waivers from the Regulations.[4] Appellants acknowledge this within their Proposed Findings of Fact and Conclusions of Law filed following our trial. We therefore DISMISS Question 1.c. as irrelevant to the proposed subdivision.

The remaining issues before the Court are: (1) whether Applicant satisfied notice and posting requirements; (2) whether the Project complies with provisions of the Regulations *specific* to PUDs; and (3) whether the Project complies with the Jericho Town Plan.

Based upon the evidence presented at trial, which was put into context by the site visit, the Court renders the following Findings of Fact.

**Findings of Fact**

1.      Applicant seeks subdivision approval authorizing a six-unit, three-duplex PUD subdivision on a 28.5-acre portion of a 143-acre parcel of land located at 44 Raceway Road, Jericho, Vermont (Project).

---

First, we conclude that the Project is set back 85 feet from wetlands, which complies with minimum requirement of a 50-foot wetland buffer. See Vermont Wetland Rules § 4.2, 16-5 Vt. Code R. § 10:4.2.

Second, with respect to the wastewater system, a minimum 25-foot setback from top of bank or a slope greater than 30 degrees is required. See Waste Water and Potable Water Supply Rules § 1-807(a), 16-3 Vt. Code R. 300:1-807(a). Based on the credible testimony of David Burke, the wastewater system is located more than 25 feet from the top of bank, and we therefore conclude that the Project conforms with the Regulations' required wastewater setbacks. See 11.7.4.1 (requiring wastewater systems conform with the Waste Water and Potable Water Supply Rules).

Third, we disagree with Appellants' suggestion that the Project will endanger the Foothills Development's water supply. The Regulations impose a 200-foot radius wellhead protection zone for the Foothills Development's water supply. See Regulations § 6.6.2.1. The Project's wastewater disposal system is outside of the Foothills wellhead protection area (WHPA). Although a portion of Norton Lane and Unit #6 are located within the protection zone, the Department of Environmental Conservation was on notice of these issues when it considered the application, but was not concerned and granted the waste water permit. Appellants also suggest that a hydrogeological study is required, but we conclude such a study is not required for the Project because the wastewater system is outside of the Foothills WHPA, and the shared system flows, about 1,830 gallons per day (gpd), are below the lowest threshold (2,000 gpd) for a mounding analysis and the higher 6,500 gpd trigger for hydrogeological study.

[4] Applicant initially requested a waiver of the Zoning Regulations' requirement of a 100-foot setback from neighboring property lines, but in its final application Applicant abandoned the waiver and the proposed project provides the 100-foot setback.

4

2. The Project is a two-lot subdivision; one lot contains three "footprint" lots, each with a duplex structure, and the second lot of approximately 27.99 acres is designated as common land to remain undeveloped.

3. A pre-existing trail on the common land is proposed to be retained.

4. Residents of the PUD would be age-restricted as 55 years of age or older (55+).

5. Stephen Atwood and his wife hope to live in one of the duplex units.

6. The Project will have an access drive off of Meadow Drive.

7. The Project has no frontage on Meadow Drive or Raceway Road.

8. The approximately 115 acres of the 143-acre parcel that are not part of the proposed PUD will be retained by current owner Dean Davis. Of the 115 acres, approximately 85 acres are agricultural fields and the remainder is wooded.

9. The 143-acre lot (and the future 115-acre portion) has and will have a farm access curb cut off of Raceway Road close to the bridge over the Browns River and close to Raceway Road's intersection with Route 15.

10. The Davis family has used the entire 143-acre parcel for agriculture for generations.

11. Dean Davis intends to continue agriculture use of the Davis Property. Current uses include pasturing dairy cattle and cultivating hay. At this time, the 115 acres is intended to stay in agricultural/forestry use, however, Mr. Davis is not offering a condition restricting future use.

12. The Project will not impact farming of the 115 acres of retained land.

13. The Jericho Land Use and Development Regulations, adopted December 6, 2012, effective February 7, 2013, apply to the Project.

14. The Project is located in Jericho's Agriculture District.

15. The access driveway is located in Jericho's Village District.

16. Applicant filed its application with the Town on August 8, 2014.

17. Applicant seeks a 50% density bonus for the Project as an age-restricted community (55+ pursuant to the federal Housing for Older Persons Act). The Project is intended to provide senior/elderly housing pursuant to Section 10.13.8 of the Zoning Regulations.

18. Design aspects accommodating the 55+ age residents include a minimal number of steps into the units, handicap accessible bathrooms, tile and hardwood floors for ease of

movement, doorways with a minimum width of three-feet, and no internal elevation changes or transition steps.

19. The clustered duplex units will be energy star compliant.

20. The Project is subject to conditions set forth in the Declarations of Covenants, Easements, Restrictions and Liens for Norton Meadows.

21. The three one-story duplex structures are to be clustered at the eastern edge of the parcel, adjacent to the nearby Foothills Residential Development.

22. The Foothills Residential Development was constructed in the 1960s and early 1970s.

23. The Project is not related to the Foothills Residential Development.

24. Pursuant to a February 3, 2014 agreement, Frances Begnoche Boucher agrees to sell to Stephen E. Atwood and assigns a 0.29-acre, 60-foot wide parcel of land leading from Meadow Drive to the Project to serve as the access drive (Access Drive Parcel). Closing on this transaction will take place within 30 days of all permit approvals.

25. The proposed access drive enters the Project from Meadow Drive, which is a public road within the Foothills Residential Development. Other than this access drive, the Project will not have any common features with the Foothills Residential Development.

26. A 24-foot wide private driveway is proposed over the Access Drive Parcel and will be called Norton Way. Norton Way is designed to meet public works specifications of the Town of Jericho relating to public road standards.

27. The intersection of Norton Way with Meadow Drive has adequate sight distances.

28. The access drive requires Town approval, and Mr. Atwood has not begun this process yet as the approval is only valid for a one-year period for completion of construction.

29. The Project will not make the Underhill–Jericho Fire Department unable to provide fire protection to the Project or community.

30. The Project initially proposed a light pole at the corner of Meadow Drive and Norton Way. In response to abutting landowner requests, this light pole was eliminated from the Project plans.

31. The Project retains trees along Norton Way. Supplemental tree plantings are proposed for privacy screening along the Project tract and the abutting Foothills Residential Development lots.

32. The Project includes setbacks from the abutting Foothills Residential Development lots in excess of 100 feet.

33. The Project has an 85-foot setback from wetlands.

34. The Foothills Development's water supply is located on the east side of Raceway Road.

35. Properties within the Foothills Residential Development have individual wastewater disposal systems up-gradient of their water source. These systems have not posed a threat to the Foothills water supply. There are approximately fifteen of these systems.

36. A portion of Norton Lane and Unit #6 are located within the WHPA for the Foothills water supply.

37. The Project's wastewater disposal system is outside of the Foothills Wellhead Protection Area (WHPA).

38. The Department of Environmental Conservation issued Wastewater System and Potable Water Supply Permit #WW-4-4399 for the Project, and that permit is final and binding.[5]

39. The approved water supply and wastewater system includes three shared drilled wells for water supply and one shared wastewater disposal system.

40. The Department of Environmental Conservation was on notice of the proximity of the Project's wastewater disposal system to the Foothills WHPA when it considered and granted the WW-4-4399 Permit.

41. The Project's wastewater system flows are about 1,830 gallons per day (gpd), below the lowest 2,000 gpd threshold for a mounding analysis and the higher 6,500 gpd trigger for hydrogeologic study.

42. Purchasers of units within the Project will have the option of constructing a "bump out" garage or addition approximately 12 feet by 24 feet in size.

43. The Project has 0.93 acres of impervious area.

---

[5] Brian and Catherine Stevens appealed WW-4-4309 to this Court. In a February 18, 2015 Order, this Court dismissed their appeal as untimely. The February 18, 2015 Order was not appealed and is now final.

7

44.     If all owners select the option of the "bump out" addition, the Project's impervious area will remain less than 1-acre.

45.     The Project's stormwater treatment includes a grass channel swale and level-spreader system.

46.     The Project's stormwater treatment system will mitigate stormwater runoff to maintain or reduce stormwater flows.

47.     The 27.99 acres of common land contains wooded and Town-designated protected areas.

48.     The Jericho DRB's October 27, 2014 approval sets forth the following 19 conditions:

a.      The subdivision shall adhere to the set of Plans entitled "Norton Meadows" Sheets 1-7 and PL-1, dated 8/07/14, as prepared by O'Leary-Burke Civil Associates, PLC and the architectural elevation entitled "Atwood Residence" Sheet 3.0, dated 4/30/14 as prepared by Frank Naef, Architect, and submitted to the Jericho Development Review Board 9/25/14.

b.      Within 180 days of approval by the Development Review Board, a Mylar copy of the Final Plat shall be submitted for recording by the applicant, signed by the Chair of the Development Review Board and filed with the Jericho Town Clerk.

c.      The reconfigured lots shall be monumented in accordance with the *Town of Jericho Land Use & Development Regulations* §11.4.10.

d.      The subdivision Mylar for recording shall include all easement(s), rights-of-way, and building envelopes.

e.      Prior to issuance of any Building Permit, an approved Driveway Access Permit must be provided to the Zoning Administrator for the new private driveway and cul-de-sac serving the proposed new dwellings.  This driveway shall conform to *the Town of Jericho Public Works Specifications Ordinance*, amended 1/22/09.

f.      Prior to issuance of a Building Permit for any lots in this subdivision, a copy of the final *Declaration of Covenants, Easements, Restrictions and Liens for Norton Meadows* must be filed in the Town of Jericho Land Records.  The language contained in the sections relating to use and access of the common land, as well as the age-

8

restrictions and requirements for dedicated senior housing in the final recorded *Declaration of Covenants, Easements, Restrictions and Liens for Norton Meadows* shall not substantially differ from the draft provided for the final hearing.

g.        The purchasers of any proposed new dwelling in this subdivision shall be shown a copy of this approval prior to any written contract of sale.

h.        In accordance with the *Town of Jericho Land Use & Development Regulations* §10.3.1., prior to issuance of a Building Permit, the applicant shall secure a Wastewater and Potable Water Supply permit from the State of Vermont.

i.        In accordance with the *Town of Jericho Land Use & Development Regulations* §9.9.1 and §11.12.2., all new utilities shall be run underground to any new structure on the property.

j.        All other improvements shall adhere to the requirements of the *Town of Jericho Land Use & Development Regulations* in effect as of this date.

k.        In accordance with the *Town of Jericho Land Use & Development Regulations* §11.13.2., the applicant shall conform to the best practices set forth in the Vermont Stormwater Management Manual.

l.        Landscaping shall be installed in conformance with the Planting Specifications in the *Town of Jericho Land Use & Development Regulations* §11.8.7.  At the time of planting, canopy-forming deciduous trees shall be at least 2 inches in diameter, measured at a point four feet above finished grade.  All planting shall be guaranteed for a period of three (3) years from the date of planting.  Per the requirements of this section, the trees selected for planting along the shared driveway and cul-de-sac shall be a species that reaches mature height of 40ft or more, otherwise the spacing of the trees shown on the plans shall be reduced.

m.        In accordance with the *Town of Jericho Land Use & Development Regulations* §11.13.2., areas exposed during construction shall be treated in a manner consistent with the procedures contained in the Vermont Handbook for Soil Erosion and Sediment Control on Construction Sites published by the Vermont Department of Environmental Conservation.

n.      The sequence of construction activities shall be designed so that the smallest area possible is disturbed at any one time. Only areas where active construction is taking place shall be exposed. Other areas shall be protected by vegetative and structural control measures. Seed and mulch shall be applied as soon as possible to disturbed soil.

o.      In accordance with the *Town of Jericho Land Use & Development Regulations* §11.4.8., clearing and grading activities occurring outside of the building envelope shall be limited to what is necessary to construct and maintain the wastewater treatment system and driveway as shown on the Site Plan and Final Plat.

p.      The applicant will obtain and abide by all conditions of all other required local and State permits.

q.      The project will be constructed and subsequently operated consistent with all Findings of Fact set forth above and in any other permit obtained by the applicant for this project.

r.      Substantial revisions to this plan shall require the further review and approval of the Development Review Board at a publicly warned hearing.

s.      By acceptance of these conditions without appeal, the applicants confirm and agree for themselves and all successors in interest that the conditions of this decision shall run with the land and shall be binding and enforceable.

49.     Existing land uses within a mile surrounding the Project include residential duplexes, multiplexes, and multi-family structures.

50.     The neighboring Foothills Residential Development is a residential neighborhood including single-family, two-story or ranch-style homes.

51.     The roads within the Foothills Residential Development are paved and there are no sidewalks.

52.     In late August 2014, the Town provided Mr. Atwood with a hearing notice placard (Hearing Notice).

10

53.     The Hearing Notice contained a statement that a public hearing would be held on September 25, 2014 at 7:00 p.m., a description of the Project, and a statement of the need for interested persons to participate in order to preserve their appeal rights.

54.     Mr. Atwood posted the Hearing Notice on a tree in the area of 44 Raceway Road.  The Town Zoning Office instructed Mr. Atwood to place the Hearing Notice in this location.   The tree is located on the northwest side of the Raceway Road Bridge over the Browns River, immediately south of the farm access to the 143-acre parcel.  This location is adjacent to the Project site and on land owned by Dean Davis.

55.     According to credible testimony, the placard could be seen from Raceway Road, which is a public right-of-way.

56.     The Town published the Hearing Notice in a newspaper of general circulation in Jericho, posted it in two public places, and mailed copies to abutting land owners.

**Conclusions of Law**

I.     Did Notice and Posting Comply with Regulation and Law

Appellants' Question 1.a. asks whether Applicant has satisfied the procedural requirements to obtain approval, such as compliance with the notice and posting requirements of the Regulations and applicable law.   The evidence offered at trial centered on the requirement that Applicant post notice of the application and the related public hearing before the DRB.

Section 4464(a)(1) sets forth the notice requirements for "[a]ll development review applications before an appropriate municipal panel."   24 V.S.A. § 4464(a)(1).   Section 4464(a)(1)(B) provides that notice of the public hearing must be posted "in three or more public places within the municipality in conformance with location requirements of 1 V.S.A. § 312(c)(2), including posting within view from the public right of-way most nearly adjacent to the property for which an application is made."

Appellants assert that Applicant failed to provide adequate notice of the municipal public hearings as required by 24 V.S.A. § 4464(a) because Applicant's notice was not posted "within view from the public right-of-way most nearly adjacent to the property for which the

11

application is made." 24 V.S.A. §4464(a)(1)(B). Specifically, Appellants challenge the adequacy of the chosen location in two ways. They first claim that the tree Applicant posted notice on was not visible from Raceway Road. Second, they suggest that the notice should have been posted near Meadow Drive at the intersection with the proposed access drive because this location constitutes the area "most nearly adjacent to the property for which the application is made."

We reject both claims by Appellants and find the notice of the public hearings was placed in an appropriate location and afforded adequate notice. As to the visibility of the notice, based on the evidence before the Court, and having the contextual input from the site visit, the Court concludes that the tree upon which notice was posted is visible from Raceway Road which is a public right-of-way.

Next, we find that although Meadow Drive may have, in a literal sense, been the public roadway "most nearly adjacent" to the Project area, the chosen location of Raceway Road more clearly identified the land at issue in the application. Mr. Atwood posted the Hearing Notice on a tree to the west of Raceway Road on the large tract of land owned by Dean Davis. The Town Zoning Office instructed Mr. Atwood to place the Hearing Notice in this location because this location was most visible and was where the most traffic passed by the Project area. The tree upon which notice was posted is immediately adjacent to Mr. Davis's property (the 143-acre parcel), although the portion of Mr. Davis's land nearest to Raceway Road is not part of the Project. Nevertheless, while the area of Mr. Davis's property proposed for the Project is closer to Meadow Drive, the Project area is separated from Meadow Drive by a row of house lots and existing homes, and posting notice along Meadow Drive would not have clearly identified the area that was the subject of the notice. Furthermore, to the extent there is disagreement over the most appropriate location to post, we note that it is incumbent upon an interested party to make reasonable inquiry as to the details of a proposed project once notice is received. Certainly, the posting off of Raceway Road afforded notice to interested parties, triggering their duty to further investigate the details of the Project so that they could become aware of the Project's location.

12

Lastly, even accepting that the location of the notice did not expressly comply with the procedural requirements of 24 V.S.A. § 4464(a)(1)(B), we find the defects of no consequence. 24 V.S.A. § 4464(a)(5) provides that "[n]o defect in the form or substance of any requirements in 24 V.S.A. § 4464(a)(1) or (2) of this subsection shall invalidate the action of the appropriate municipal panel where reasonable efforts are made to provide adequate posting and notice," and where the defective posting was not "materially misleading in content." Here, we conclude that Applicant made "reasonable efforts" as measured against the statutory requirements;[6] Applicant posted the notice at the direction from the Town, and, as discussed above, this location was actually the best location to clearly identify the property that pertained to the notice. Appellants do not suggest that the contents of the Hearing Notice was materially misleading. As a result, regardless of any procedural defects, we find the posted notice valid.

Our conclusion that the posting and notice in this matter was sufficient is also supported by the lack of harm offered by interested parties. "The purpose of the notice provisions in 24 V.S.A. § 4464 is to inform interested persons of a proposed action and to give them a reasonable opportunity to express their support or opposition." In re S. Vt. Beagle Club, No. 142-9-11 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh J.). Appellants participated in the municipal proceeding and did not articulate a cognizable injury stemming from the alleged noncompliant notice. Therefore, even if procedurally defective, the purpose of the notice provision of 24 V.S.A. § 4464(a) was fulfilled.

II.     Does the Project Comply with PUD Regulations

Amended Question 1.b. asks whether the proposed subdivision meets the requirements of the Regulations applicable to planned unit developments. As explained above, we consider this question to ask whether the Project complies with the portions of the Regulations specific to PUDs, i.e., Section 10.13 (Planned Unit Development Review). Pursuant to the Regulations, projects that result in three or more lots must be designed and approved as a PUD. See

---

[6] We do, however, warn applicants generally that any attempt to willfully subvert the public notice process might subject applicants to sanctions, including but not limited to, remanding the matter to the municipality to provide new posting and notice and to hold a new hearing(s). That being said, Appellants in this matter have not presented evidence sufficient to demonstrate misconduct by Applicant, nor have Appellants presented evidence showing that efforts to provide notice were otherwise unreasonable or "materially misleading in content."

13

Regulations § 10.13.2. The Project involves three "footprint" lots, common to PUD developments, upon which three duplexes (six units) will be constructed and is thus subject to PUD review.

Although Appellants have raised the issue of compliance with the PUD review provisions of the Regulations, they do not highlight any specific areas of the Regulations that conflict with the Project. Nevertheless, we review the relevant provisions in turn, and based on our own review of the Regulations, we find the Project complies with Section 10.13.

Section 10.13.1 provides that PUDs "are intended to further the goals and objectives of the Jericho Comprehensive Town Plan" and that, among other things, "flexibility is encouraged in site and lot layout, building design, and the placement and clustering of buildings." The Project clusters the six units in three duplex buildings on the eastern edge of the parcel near the Foothills neighborhood. A majority of the Project's 28.5 acres will be designated as common land to remain undeveloped open space. The open space will have an improved pre-existing pedestrian trail.

Section 10.13.1.1 encourages compact, pedestrian-oriented development and promotes a mix of residential and nonresidential uses in village centers. While the Project is not located in a village center, it does promote a mix of residential uses through its design as three duplex buildings. The 24-foot wide access road accommodates both vehicle and pedestrian movement. There are no sidewalks in the neighboring Foothills Development so there is nothing specifically for pedestrian movement to connect to. There is an existing pedestrian trail within the open space area of the Project. This trail will be retained.

Section 10.13.1.3 encourages development compatible with surrounding rural lands. As expressed above, the Project clusters the six units in three duplex buildings on the eastern edge of the parcel near the Foothills Development. The Foothills Development is located in the Village Zoning District, but the area itself is a rural setting. A majority of the Project's 28.5 acres will be designated as common land to remain undeveloped open space and is thus compatible with the surrounding land. The Project is compatible with the existing character of the surrounding area land uses. Several multi-family properties, including duplexes, multiplexes, and other multi-family dwellings exist within a mile of the Project site.

14

Sections 10.13.1.3, 10.13.1.4, 10.13.4, 10.13.5, and 10.13.6 of the Regulations encourage preservation of open space and seek to ensure that development will be compatible with the surrounding rural landscape. The majority of the Project's 28 acres will remain undeveloped open space with development only occurring on a small portion near an existing development. Therefore, the Project is in compliance with Sections 10.13.1.3, 10.13.1.4, 10.13.4, 10.13.5, and 10.13.6.

Section 10.13.1.5 provides that the development should use public facilities and infrastructure efficiently. The Project complies with Section 10.13.1.5 as it is more efficient to access the Project from Meadow Drive rather than Raceway Road.[7] Furthermore, the existing curb cut off of Raceway Road is reserved for Mr. Davis's ongoing agricultural use of his retained land.

Section 10.13.1.6 encourages projects to employ energy-efficient development. The Project complies with Regulation Section 10.13.1.6 as the clustered duplex units will be energy star compliant.

Sections 10.13.7 and 10.13.8 establish the generally permitted density for a PUD and density bonuses for certain types of PUDs. The Project complies with the density allowances established in Sections 10.13.7 and 10.13.8. The total approved residential density in a PUD is determined by first calculating the total number of potential lots as if the PUD were a conventional subdivision (total acreage of the parcel divided by the minimum lot area for that zoning district). See Regulations § 10.13.7.1. Here, the proposed parcel is 28.5 acres, and the minimum lot area in the Agriculture District (where the Project is located) is 10 acres, resulting in 2.8 lots. See Regulations § 5.7 tbl. Thereafter, pursuant to Section 10.13.7.1, the number of potential lots is reduced by 25% to account for site constraints, leaving a total of 2.1 lots (2.8 multiplied by .75). As each lot in a conventional subdivision is entitled to two multifamily

---

[7] Although not specifically raised as an issue within their Amended Statement of Questions, Appellants assert that pursuant to Section 5.8 of the Regulations, a minimum of 75 feet of road frontage is required for a PUD within the Agriculture District. The Project has no road frontage on either Meadow Drive or Raceway Road. The Regulations provide an alternative for lots with no frontage. Section 5.2.2 allows land development of lots with road access by a permanent easement or right-of-way at least thirty feet in width. The Project includes a February 3, 2014 agreement between neighboring lot owner Frances Begnoche Boucher who agrees to sell to Stephen E. Atwood & Assigns 0.29 acres configured as a 60-foot wide parcel of land leading from Meadow Drive to the Project to serve as the access drive. Closing on this transaction will take place within 30 days of all permit approvals. We conclude that this purchase agreement, if concluded, satisfies Section 5.2.2.

dwelling units, the 2.1 lots allows for a total of four units.  See id. § 10.13.7.  Here, however, because Applicant seeks approval for each residential unit to house persons 55 years old or older, Applicant may receive a 50% density bonus, thus allowing up to six units.  See Regulations § 10.13.8.[8]  Appellants suggest that Applicant is not entitled to the density bonus because the development does not meet the definition of elderly housing in the Regulations.[9]  Based on Applicant's design plans, we find the Project qualifies as elderly housing and thus may receive the 50% density bonus.[10]  Therefore, we find that the Project's six dwelling units in three duplex buildings are permitted.

Section 10.13.9.4 (along with Section 5.8) require a 100-foot buffer between the Project and lot boundaries.  The required buffer applies to structures and building envelopes.  The Project buildings/building envelopes are located approximately 110 feet from the abutting Foothills properties, and therefore the Project complies with the minimum 100-foot-buffer requirement.

Section 10.13.9.7 requires that a PUD provide for vehicular and pedestrian connectivity with neighboring developments wherever possible.  The Project's access road is 24 feet wide, accommodating both vehicle and pedestrian movements onto the neighboring Meadow Drive.  Appellants argue the Project fails to provide for pedestrian connectivity because it lacks sidewalks, yet there are no sidewalks in the Foothills Development so sidewalks would not help the Project connect with neighboring developments.

---

[8] "Elderly housing" is defined in the Regulations as a single or multi-family dwelling "designed and intended for occupancy by a least one person who is fifty-five [55] years of age or older."  Regulations § 2 (Dwelling). The Jericho Comprehensive Town Plan uses the terms elderly housing and senior housing interchangeably.

[9] Appellants suggest that because Applicant initially only proposed three units as elderly housing, the units were not "specifically designed and intended" for occupancy by elderly persons. See Regulations § 2 (Dwelling). We find this argument unpersuasive. We note that Applicant's current proposal intends all units to be for elderly housing and the plans for these units include specifications to accommodate elderly persons, such as handicap accessibility, three foot wide doors, and level flooring without transition strips. The fact that Applicant may have at one point only envisioned three units for elderly housing, does not render the Project as currently proposed, ineligible for the elderly housing designation.

[10] Such units are also subject to appropriate restrictions to ensure that they meet the definition of affordable or elderly housing. Project specific designs for occupancy by people fifty-five years or older include a minimum number of steps unto the units, baths with handicap access, tile and hardwood floor for ease of movement, handicapped accessibility, three-feet wide doorways, and no internal elevation changes or transition steps.

We therefore conclude that the Project complies with the Regulations' Planned Unit Development Review requirements.

III.     Does the Project Comply with the Town Comprehensive Plan

Amended Question 1.d. asks whether the proposed subdivision complies with the Town of Jericho Comprehensive Plan, adopted February 17, 2011 (Town Plan).  During trial, the parties provided little evidence on the Project's compliance with the Town Plan.   Based upon the little evidence and our own review of the Town Plan, we conclude that the Project complies with the Town Plan.  A couple of notable examples of compliance are as follows.

Section 3 of the Town Plan sets forth the Town's land use districts and describes envisioned development patterns to be used as the basis for the Regulations.  The Town Plan recommends PUDs in the Agriculture District in order to preserve rural land and resources when siting new residential development.  See Town Plan at 15.   While this statement establishes a policy or goal for the Town Plan, it does not create a legally enforceable requirement.  See In re Grp. Five Invs. CU Permit, 2014 VT 14, ¶ 16, 195 Vt. 625 ("[G]eneral statements in [a town] plan are insufficient to create a legally binding standard."). Nevertheless, the Project is proposed as a PUD, and therefore, furthers the policy.

Similarly, included within "Strategies to Encourage Housing Options," the Town Plan suggests that regulations and policies should encourage density bonuses and variable lot sizes to promote affordable and elderly housing, and specifically suggests that the Regulations should allow variable lot sizes and density bonuses for PUDs that provide elderly housing.  See Town Plan at 65.  Again, even though this section of the Town Plan is aspirational, we conclude that the Project complies with this aspiration.

We thus conclude that the Project complies with the Town Plan.

**Conclusion**

For the reasons discussed above, we **DISMISS** Questions 1.c. of the Amended Statement of Questions, raising the issue of waivers from the Regulations, as irrelevant to the proposed subdivision.  We also conclude that Applicant has satisfied the notice posting requirements of

the Regulations and applicable law, that the Project complies with the Regulations' Planned Unit Development Review, and that the Project complies with the Town Plan.

Applicant proposes to be subject to all 19 conditions of the Jericho DRB's October 27, 2014 Approval set out above as Finding of Fact number 48. We therefore impose these conditions. We **REMAND** this matter to the Town Zoning Administer for the ministerial act of issuing a zoning permit consistent with this decision.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Electronically signed on February 04, 2016 at 03:51 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division